FILED
NOV 0 9 1999
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CRIMINAL NO. W-99-CR-013 |
| Plaintiff, | * | 3rd SUPERSEDING INDICTMENT |
| V. | * | [Vio: 21 U.S.C. 846 {21 U.S.C. 841(a)(1)} -- Conspiracy to |
| | * | Possess With Intent to Distribute More than 500 Grams of Methamphetamine, |
| FRANCISCO TIJERINA, (3) | * | a Schedule II Controlled Substance; |
|   AKA: CISCO | | 18 U.S.C. 1956(h) – Money Laundering |
| RUBEN ADAME, (4) | * | Conspiracy] |
| MELISSA PEREZ, (5) | | |
| JAMES BRIAN CRUZ, (6) | * | |
| VALENTE MARTINEZ, (7) | | |
|   AKA: ISIDRO HERRERA DELGADO | * | |
|   AKA: MARTIN SANDOVAL-CALIXTO | | |
|   AKA: ADRIAN TRUJILLO-ORTIZ | * | |
| EUGENIO VILLA, (8) | | |
|   AKA: ARMANDO AGUIRRE CORREA | * | |
| | * | |
| Defendants. | * | |

THE GRAND JURY CHARGES:

<u>COUNT ONE</u>
[21 U.S.C. § 846 (21 U.S.C. § 841{a}{1})]

Beginning at least as early as April 1, 1997, the exact date unknown to the Grand Jury, and continuing until the date of this indictment, in the Western and Northern Districts of Texas, and elsewhere, Defendants,

FRANCISCO TIJERINA,
AKA: CISCO,
RUBEN ADAME,
MELISSA PEREZ,
JAMES BRIAN CRUZ,

1

82

**VALENTE MARTINEZ,**
**AKA: ISIDRO HERRERA DELGADO,**
**AKA: MARTIN SANDOVAL-CALIXTO,**
**AKA: ADRIAN TRUJILLO-ORTIZ,**
**EUGENIO VILLA,**
**AKA: ARMANDO AGUIRRE CORREA,**

and others to the Grand Jury both known and unknown, did unlawfully, intentionally and knowingly combine, conspire, confederate and agree together and with each other, to possess with intent to distribute more than 500 grams of Methamphetamine, a Schedule II Controlled Substance, contrary to Title 21, United States Code, Section 841(a)(1), and in violation of Title 21, United States Code, Section 846.

### COUNT TWO
### [18 U.S.C. § 1956(h)]

Beginning at least as early as April 1, 1997, the exact date unknown, and continuing until on or about February 1, 1999, in the Western and Northern Districts of Texas, and elsewhere, Defendants,

**FRANCISCO TIJERINA,**
**AKA: CISCO,**
**VALENTE MARTINEZ,**
**AKA: ISIDRO HERRERA DELGADO,**
**AKA: MARTIN SANDOVAL-CALIXTO,**
**AKA: ADRIAN TRUJILLO-ORTIZ,**
**EUGENIO VILLA,**
**AKA: ARMANDO AGUIRRE CORREA,**

and other persons both known and unknown, did unlawfully, willfully and intentionally combine, conspire, confederate and agree together and with others, to commit offenses against the United States, to wit:

1. Knowing that the property involved in a financial transaction affecting interstate and foreign commerce represented the proceeds of some form of unlawful activity, did conduct and attempt to conduct a financial transaction with intent to promote the carrying on of specified unlawful activity, that is, the conspiracy to distribute and to possess with intent to distribute methamphetamine, a Schedule II Controlled Substance, under the laws of the United States, in violation of Title 18, United States Code, Section

1956(a)(1)(A)(i); and/or,

2. Knowing that property involved in a financial transaction affecting interstate and foreign commerce represented the proceeds of some form of unlawful activity, conducted and attempted to conduct a financial transaction knowing that the transaction was disguised in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, that is, the conspiracy to distribute and to possess with intent to distribute methamphetamine, a Schedule II Controlled Substance, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### The Scheme, Manner, and Means of the Conspiracy

The conspiracy was executed in the following manner through the following means:

1. Beginning in or about, April, 1997, **VALENTE MARTINEZ, EUGENIO VILLA,** ▮▮▮▮▮▮▮▮▮▮, **ANDRES VARGAS** and **FRANCISCO TIJERINA** participated in an illegal drug trafficking organization involved in the distribution of methamphetamine, a Schedule II Controlled Substance. During the time period of this conspiracy, **VALENTE MARTINEZ and EUGENIO VILLA** would obtain methamphetamine from sources and distribute it to ▮▮▮▮▮▮▮▮▮▮ **ANDRES VARGAS, FRANCISCO TIJERINA** and other people in the Northern and Western Districts of Texas.

2. In order to facilitate this illegal enterprise, **VALENTE MARTINEZ and EUGENIO VILLA,** would front (the practice of buying and selling narcotics on consignment) the methamphetamine to **ANDRES VARGAS** and **FRANCISCO TIJERINA. ANDRES VARGAS** and **FRANCISCO TIJERINA** would then front that methamphetamine to their distributors. Currency obtained in payment for this methamphetamine was then transported by persons known and unknown back to **ANDRES VARGAS** and **FRANCISCO TIJERINA**, and then on to **VALENTE MARTINEZ, EUGENIO VILLA** and ▮▮▮▮▮▮▮▮▮▮.

3. During the course of this conspiracy, persons known and unknown opened and utilized bank accounts, and acquired assets with this currency. These bank accounts and assets were used to further the ongoing illegal activity. Some of these assets were placed in nominee names in order to conceal and disguise the nature, location, source, ownership and control of the assets. Pursuant to, and in furtherance of, and to effect the objects of this conspiracy the defendants and their co-conspirators, known and unknown, committed and caused to be committed the following overt acts:

    a. On or about December 16, 1997, **FRANCISCO TIJERINA** paid approximately $265 in United States currency to Prime Company Personal Communications for

3

the use of telephone number 214 769 2638. This phone was used by **FRANCISCO TIJERINA** to promote and further his illegal methamphetamine activities.

b. On or about January 31, 1998, **ANDRES VARGAS** paid approximately $10,000 in United States currency to ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ for previously fronted methamphetamine that was obtained from **EUGENIO VILLA**. This currency was owed to **EUGENIO VILLA** for the fronted methamphetamine. **EUGENIO VILLA** was concealing his true identity by using the alias of **ARMANDO AGUIRRE CORREA**.

c. On or about March 1, 1998, **FRANCISCO TIJERINA** and **ANDRES VARGAS** were paid approximately $7,000 in United States currency. This currency was derived from the sale of methamphetamine. This payment was for methamphetamine that had previously been fronted. **FRANCISCO TIJERINA** was concealing his true identity by using the alias of "CISCO." **ANDRES VARGAS** was concealing his true identity by using the name of "JUNIOR."

d. On or about April 1, 1998, **JENNY VARGAS** and **ANDRES VARGAS** paid $10,000 in United States currency to Anthony Tisko for the purchase of 9649 Larga Drive, Dallas, Texas. This currency, in part, represented proceeds from the sale of methamphetamine. **JENNY VARGAS** and **ANDRES VARGAS** used this residence to store and distribute methamphetamine with the intent to promote the carrying on of specified unlawful activity.

e. On or about April 17, 1998, a financial transaction occurred wherein a vacant lot located at 3547 Fontana, Dallas, Dallas County, Texas, was purchased with proceeds derived from the unlawful sale of methamphetamine, a Controlled Substance as defined by Title 21 U.S.C. § 812, as amended. **JENNY VARGAS** caused title to the subject real property to be recorded among the land records of Dallas County in her name (**JENNY VARGAS**) and REYES ALVARADO in order to conceal and disguise the true ownership and control of the subject real property and in order to conceal and disguise the unlawful proceeds realized from the unlawful sale of methamphetamine.

f. On or about April 20, 1998, **ANDRES VARGAS** paid approximately $40,000 in United States currency to **EUGENIO VILLA**, for previously fronted methamphetamine.

g. On or about June 1, 1998, **ANDRES VARGAS** delivered approximately $20,000 in United States currency to **VALENTE MARTINEZ** for previously fronted methamphetamine.

h. On or about September 2, 1998, **ANDRES VARGAS** was paid approximately $3,000 in United States currency. This currency was derived from the sale of methamphetamine. This payment was for methamphetamine that had previously

4

been fronted.

i. On or about December 11, 1998, $5,980 in United States currency was seized from **ANDRES VARGAS**. This currency came from the sale of fronted methamphetamine. **ANDRES VARGAS** was trying to conceal the true ownership of this currency as he was using the alias name of "JUAN TORRES."

j. On or about February 1, 1999, **VALENTE MARTINEZ** was paid approximately $45,000 in United States currency for previously fronted methamphetamine.

All in violation of Title 18, United States Code, Section 1956(h).

A TRUE BILL:

_____
FOREMAN

JAMES WILLIAM BLAGG
United States Attorney

By: _____
Assistant U. S. Attorney

5